**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-14-004-JHP |
| | ) | |
| TOMAS CAMARGO-CHAVEZ, | ) | |
| | ) | |
| Defendant. | ) | |

## **FINDINGS AND RECOMMENDATION**

This matter comes before this Court on Defendant's Motion to Suppress Evidence filed February 14, 2014 (Docket Entry #18) and Defendant's Motion to Suppress Statement filed February 14, 2014 (Docket Entry #19). By Order entered February 14, 2014, United States District Judge James H. Payne, the judge presiding over this case, referred the subject Motions to the undersigned for the entry of findings and a recommendation on the disposition of the Motions. To that end, on February 28, 2014, this Court conducted an evidentiary hearing and received testimonial evidence in support and opposition to the Motions. Assistant United States Attorney Kyle Waters represented the Government while the Defendant was present with his counsel, Carl Folsom. The proceedings were interpreted for Defendant. Upon consideration of the evidence presented and the arguments of counsel, this Court enters these Findings and Recommendation.

Agent Jason Tucker with the Oklahoma Bureau of Narcotics ("OBN") received information from a confidential informant as well

as what he deemed "confidential sources" that Defendant Tomas Camargo-Chavez ("Defendant") was distributing methamphetamine in the community. The confidential informant was an informant of another police department. Agent Tucker called the police chief of that department and was informed the confidential informant was reliable and had previously given information to his department. A "confidential source," according to Agent Tucker, is anyone who calls and gives information to law enforcement. Agent Tucker did not remember the confidential sources' names but knew their position. Agent Tucker ascertained Defendant had previously been arrested for distribution of narcotics and determined he had been previously deported from the United States as an illegal alien.

Agent Tucker's sources indicated Defendant was previously seen at the hotels and the Choctaw Travel Plaza and Casino located in Poteau, Oklahoma. The casino was a known site of criminal activity such as drug distribution. Agent Tucker had observed Defendant's vehicle at the Poteau Inn and the casino. Defendant was known to be driving a black Dodge Nitro. Agent Tucker first spoke with immigration officer David Burns and then Special Agent Michael Lelecas of the Department of Homeland Security that Defendant was located in Poteau, Oklahoma. Through a check of the agency database, Special Agent Lelecas discovered Defendant was a previously deported alien. He was also able to access a photograph of Defendant.

On September 26, 2013, agents from the Department of Homeland Security, including Special Agent Lelecas, and other law enforcement split up into three different vehicles and proceeded to possible locations which Defendant was known to frequent. Special Agent Lelecas observed a black Dodge Nitro enter the parking lot of the casino and park. Special Agent Lelecas testified the vehicle was occupied by one person who resembled Defendant's photograph he had previously accessed. Special Agent Lelecas observed Defendant exiting his vehicle at the casino. Special Agent Lelecas as well as immigration officer David Burns, who spoke Spanish, approached Defendant. Officer Burns identified himself and the other law enforcement as officers in Spanish and had Defendant give him personal information. Defendant informed officers of his identity. Defendant told officers that he was in the United States illegally. He also confirmed that he had been previously deported. Officers considered Defendant to be under arrest at this time due to his illegal immigration status.

Defendant was asked by law enforcement whether he had any drugs, guns, or knives on his person or in his vehicle to which he responded "no." Special Agent Lelecas then requested consent from Defendant to search his vehicle in English. Officer Burns also translated the request into Spanish. Special Agent Lelecas testified Defendant gave his responses in English. Defendant agreed to a search of his vehicle.

Agent Tucker along with another OBN Task Force officer, Detective McKinney, neither of whom was present during the conversation where consent to search was obtained, assisted Special Agent Lelecas in the search of Defendant's vehicle. During the search, Agent Tucker first found a glue substance in a compartment in the front passenger portion of the vehicle. He then noticed a case of beer behind the passenger seat of Defendant's vehicle. The case consisted of a cardboard outer sleeve with a cutout for a handle. The sleeve held nine aluminum bottle-shaped beer "cans" with twist top lids which could be resealed.

Agent Tucker testified that the case felt light when he picked it up. Officers also noticed that the case had an excess glue mark as if it had been resealed on the seam of the box. Agent Tucker took the case to the back of the vehicle and opened the case by tearing the handle on the top, maintaining the integrity of the resealed seam. Agent Tucker stated that the box could still be used to carry the beer bottles after he tore the container open. They found it to contain with nine aluminum bottles with three that Special Agent Lelecas described as "very different." The three unique bottles were extremely light and appeared to have been previously unsealed. Special Agent Lelecas stated that it obviously contained a solid rather than liquid. Agent Tucker opened four bottles finding one partially filled with beer, one empty, one containing a brown napkin, and a third containing a

white crystal substance which looked to Special Agent Lelecas and Agent Tucker to be methamphetamine. Agent Tucker field tested the white substance which tested positive for methamphetamine.

Upon discovering the narcotics, Agent Tucker read Defendant his Miranda rights while Officer Burns did the same in Spanish. Agent Tucker stated that Defendant waived his Miranda rights verbally in English. Agent Tucker then questioned Defendant about the case of beer. Defendant explained that the beer was placed in his car the night before by his friends. Agent Tucker, however, had noted that the beer was ice cold when he discovered it in Defendant's vehicle. When confronted with this fact, Defendant stated the beer was put in his car by "three white guys" without his knowledge when he drove behind a convenience store. He could not identify any of these individuals. Defendant then invoked his Miranda rights and requested the services of an attorney.

On October 11, 2013, Agent Tucker was contacted by telephone by a LeFlore County Jail employee and informed that Defendant wanted to speak with him. Agent Tucker looked at the court records and found no evidence that an attorney had entered an appearance for Defendant. Agent Tucker then consulted with the District Attorney's office and was advised that Defendant did not have an attorney.

Agent Tucker went to the LeFlore County Sheriff's Department to meet with Defendant along with Detective McKinney. Agent Tucker

first told Defendant that he was speaking with him at Defendant's request. Agent Tucker asked if Defendant had an attorney to which he responded that he did not. Agent Tucker repeatedly explained Defendant's Miranda rights to him. Defendant kept trying to talk to Agent Tucker without expressly waiving his rights, asking to make deals with him. Agent Tucker informed Defendant he could not speak with him until he signed a waiver explicitly waiving his Miranda rights. The conversation occurred in English and Agent Tucker found Defendant did not have trouble understanding him. Defendant never invoked his right to an attorney during this conversation with Agent Tucker.

On January 14, 2014, Defendant was indicted by a federal grand jury sitting in this District in a two count indictment. Specifically, Defendant was charged in Count One with Possession of a Controlled Substance with Intent to Distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and in Count Two with Illegal Reentry of Previously Removed Alien in violation of 8 U.S.C. §§ 1326(a) and (b).

Defendant first contends that the investigatory detention of him by immigration agents on September 26, 2013 was not supported by reasonable suspicion. The reasonableness of an investigatory detention depends on "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first

place." United States v. Holt, 264 F.3d 1215, 1220 (10th Cir. 2001). The detention is justified at its inception "if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." United States v. Quintana-Garcia, 343 F.3d 1266, 1270 (10th Cir. 2003). To "determin[e] whether an investigatory stop is supported by reasonable suspicion, courts must 'look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing.'" Id. "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." United States v. Arvizu, 534 U.S. 266, 273 (2002)(quotation omitted).

Reasonable suspicion means something less than probable cause and "falls considerably short of satisfying a preponderance of the evidence standard." United States v. Cheromiah, 455 F.3d 1216, 1220 (2006). Reasonable suspicion simply requires "some minimal level of objective justification." United States v. Sokolow, 490 U.S. 1, 7 (1989)(quotation omitted). While a mere hunch is not enough, the detaining officer need not rule out innocent explanations before concluding the totality of information known to the officer, combined with experience, supports a brief investigatory detention. Arvizu, 534 U.S. at 274.

At the time of Defendant's detention, Special Agent Lelecas and Agent Tucker knew (1) Defendant had been previously arrested for narcotics distribution; (2) Defendant had previously been deported as an illegal alien; (3) Defendant's appearance and vehicle identification; (4) confidential informants and sources had identified Defendant as one involved in the distribution of methamphetamine in the community; (5) Defendant frequented the Choctaw Travel Plaza and casino; and (6) the Choctaw Travel Plaza and casino was a high crime area. The fact officers knew that Defendant had previously been deported as an illegal alien alone was sufficient for a brief investigatory detention. 8 C.F.R. § 287.8(b)(2) ("If the immigration officer has a reasonable suspicion, based on specific articulable facts, that the person being questioned is, or is attempting to be, engaged in an offense against the United States or is an alien illegally in the United States, the immigration officer may briefly detain the person for questioning."). These facts and the officers' awareness of them clearly forms a reasonable articulable suspicion which justified Defendant's detention.

Defendant next challenges whether the consent to search Defendant's vehicle was voluntary, given that Defendant speaks Spanish and the detention and consent was conducted in English. The facts do not support Defendant's version of events. The evidence demonstrated that Detective Burns translated these

8

conversations into Spanish and Agent Tucker provided the same information in English. The evidence further showed that Defendant is sufficiently versed in the English language that he could carry on a conversation with Agent Tucker in the second interview and he answered questions posed to him in both interviews in English.

Without doubt, "[a] valid search may be made of a vehicle without a warrant or probable cause when a person in control of the vehicle has given his voluntary consent to search." United States v. Santurio, 29 F.3d 550, 552 (10th Cir. 1994) citing Schneckloth v. Bustamonte, 412 U.S. 218 (1973). In order to demonstrate that consent was given, "there must be clear and positive testimony that the consent was unequivocal and specific, and freely and intelligently given. . . . the Government must establish that consent was given without duress or coercion. . . . [and] the first two standards [must be evaluated] with the traditional indulgence of the courts against a presumption of waiver of constitutional rights." Id. quoting U.S. v. Recalde, 761 F.2d 1448, 1453 (10th Cir. 1985). The evidence indicates the officers involved in the request to search provided Defendant multilingual and ample warnings of his rights. Yet, Defendant voluntarily and without coercion gave his consent to search his vehicle.

Defendant further contends law enforcement officers exceeded the scope of Defendant's consent to search by opening the case of beer and the bottles contained within it. Defendant largely relies

9

upon the case of United States v. Osage, 235 F.3d 518 (10th Cir. 2000) to support his position. In Osage, the Tenth Circuit recognized the authority from the United States Supreme Court which found that "a general consent to search a particular area is reasonably understood to extend to a search of containers within that area that could contain contraband, absent some indication by the suspect that he wishes to terminate or limit the search." Id. at 521 citing Florida v. Jimeno, 500 U.S. 248, 252 (1991)("[I]f [a suspect's] consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization.") The court drew a limit to this premise in ruling that this authority did not permit the destruction of a container or rendering it completely useless. Id. at 522.

In this case, however, officers did not move to destroy the container in which the contraband was found. Some tearing of the disposable outside cardboard which allowed access to the container into which they sought access. Officers first had a reasonable suspicion of criminal activity in observing (1) a resealed cardboard sleeve; (2) a lighter weight container than what was reasonable should the container have held beer; and (3) Defendant's status as an illegal alien and prior arrest for drug distribution. Moreover, nothing in the record indicates that the cardboard sleeve had been rendered useless of its essential function - holding the

aluminum beer bottles it was designed to hold.

As for the bottles themselves, officers held the reasonable suspicion of criminal activity by noting (1) the bottles were lighter than they should have been had they held beer; (2) the bottles contained a solid substance rather than a liquid; (3) Defendant's status as an illegal alien and prior arrest for drug distribution; and (4) the bottle lids had been previously opened and twisted back on the bottle. Certainly, officers did not render the bottles useless for their purpose as they were resealable and had already been opened. Under the totality of the circumstances, officers did not exceed the scope of the consent which Defendant voluntarily provided to them.

Defendant also asserts that his statements given at the time of the October 11, 2013 interview should be suppressed because he had invoked his desire for an attorney. Defendant received the Miranda warnings repeatedly during the course of his encounter with law enforcement. Agent Tucker painstakingly repeated the Miranda warnings after making every effort available to him to insure he was not represented by an attorney. Defendant requested the meeting with Agent Tucker in an attempt to receive favorable treatment since he was attempting to reach a "deal." Defendant never invoked his right to an attorney during this second interview and did not provide even an ambiguous request. <u>David v. United States</u>, 512 U.S. 452, 459 (1994). Defendant was certainly within

11

his right to affirmatively seek to speak with law enforcement, whatever his motivations to do so. Reciprocally, law enforcement was not obligated to break off questioning when Defendant himself initiated the communication. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). Officers did not violate Defendant's right to counsel under the facts presented.

IT IS THEREFORE THE RECOMMENDATION OF THIS COURT that Defendant's Motion to Suppress Evidence filed February 14, 2014 (Docket Entry #18) and Defendant's Motion to Suppress Statement filed February 14, 2014 (Docket Entry #19) be **DENIED**.

The parties are herewith given fourteen (14) days from the date of the service of these Findings and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to these Findings and Recommendation within fourteen (14) days will preclude appellate review of the judgment of the District Court based on such findings.

IT IS SO ORDERED this 13th day of March, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE